### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RAVI KADIYALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 4533 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| BANK OF AMERICA CAPITAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

The motion of former plaintiff, Ravi Kadiyala, to vacate the court's order substituting Credit Union Mortgage Utility Banc, Inc. ("CUMU") as plaintiff (dkt. 49) is granted. Kadiyala is reinstated as plaintiff. Ravi Kadiyala is substituted as plaintiff in place of Credit Union Mortgage Utility Banc, Inc. and the Clerk shall change the docket to reflect this change. Kadiyala's motion for summary judgment (dkt. 19) is denied, and the defendant Bank of America Capital Corporation's[1] ("BofA") motion for summary judgment (dkt. 34) is granted. Judgment is entered in favor of Bank of America Capital Corporation on all counts. This case is terminated. See statement.

### STATEMENT

**I.    Relevant Facts**

In October 2012, Kadiyala entered into a stock purchase agreement with Mark Pupke to purchase 49 percent of Euro International Mortgage, Inc. ("EIM"). The agreement closed on December 31, 2012. As part of the sale, Pupke opened a new BofA account for EIM ("Account 9378"), authorized Kadiyala as a signatory on the account, and provided Kadiyala with log-on information to access the account online. This information also allowed Kadiyala online access to all of EIM's linked accounts.

On January 5, 2013, Kadiyala used BofA's online services to transfer at least $200,000 from an EIM account on which he was not a signatory ("Account 3998") to Account 9378. Two days later he used the funds in Account 9378 to purchase two $100,000 cashier's checks from different BofA branches in New Jersey. The checks were made payable to Himont Law Group ("Himont Law"), the firm at which Kadiyala's former counsel, Al Haroon Husain, works.

---

[1] The defendant asserts that Kadiyala incorrectly sued Bank of America Capital Corporation and the correct defendant is Bank of America, N.A. (*See* dkt. 6 at 1.) Neither party has moved to substitute the proper defendant and the issue is not material to the disposition of the case.

On January 7, 2013, Pupke submitted a fraud claim to BofA regarding Kadiyala's transfer and subsequent withdrawals. In response, BofA stopped payment on the cashier's checks and reversed the transfer from Account 3998 to Account 9378. Kadiyala challenged BofA's actions, but BofA refused to release the stop payments on the checks and ultimately closed Account 9378. Kadiyala then filed suit against BofA, alleging breach of contract, violation of the Uniform Commercial Code ("UCC"), and breach of fiduciary duty.[2] Kadiyala and BofA have filed cross motions for summary judgment on Kadiayala's claims. (Dkts. 19, 34.)

Prior to March 2014, Kadiyala was a member of the board of directors of CUMU and was one of its officers. It appears that he was removed from CUMU's board and resigned his officership in March 2014. (*See* dkt. 53 at 2, ¶ 11; *id.*, exs. D, E.) Kadiyala's former counsel in this suit, Husain, is a CUMU board member and stockholder. Shortly after Kadiyala left CUMU, he emailed Husain to terminate Husain's representation of him in this suit. (*See* dkt. 49, ex. A.) Husain, however, did not move to withdraw as Kadiyala's counsel. Instead, in May 2014, Husain moved to substitute CUMU as plaintiff, representing that Kadiyala had transferred the funds from Account 3998 to Account 9378 on behalf of CUMU and that the funds properly belonged to CUMU. (*See* dkt. 44 at 1-2.) Kadiyala did not oppose the motion and the court granted it on May 20, 2014. (Dkt. 47.) On June 6, 2014, Kadiyala moved to vacate CUMU's substitution as plaintiff, arguing that Husain had filed the substitution motion without authorization after he was terminated as Kadiyala's counsel. (*See* dkt. 49.)

## II.    Analysis

### A.    Substitution of CUMU

Husain, acting as counsel to Kadiyala in this suit, was forbidden from taking any action without his client's explicit or implied consent. *See* Ill. R. Prof. Conduct, Rules 1.2, 1.4; ABA Model R. Prof. Conduct, Rules 1.2, 1.4. This includes the substitution of a different plaintiff in Kadiyala's stead. Further, after Kadiyala terminated Husain in April 2014, Husain was obliged to withdraw from his representation of Kadiyala. *See* Ill. R. Prof. Conduct, Rule 1.16(a)(3); ABA Model R. Prof. Conduct, Rule 1.16(a)(3). Husain filed his motion to substitute CUMU, which Kadiyala did not authorize, after his representation was terminated. Thus Kadiyala's motion to vacate the court's order substituting CUMU as plaintiff is granted.[3]

---

[2] Kadiyala originally filed his complaint in Illinois state court. BofA removed the action to this court under 28 U.S.C. § 1441. (Dkt. 1.) This court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Kadiyala and BofA. Venue is proper under § 1441.

[3] Husain claims that Kadiyala was named as plaintiff by "misnomer." But misnomer only applies "where the plaintiff brings an action and serves summons upon the party *intended* to be made the defendant . . . but the process and complaint do not refer to the person by his correct name." *Arendt* v. *Vetta Sports, Inc.*, 99 F.3d 231, 234 (7th Cir. 1996) (emphasis in original). Misnomer is not applicable to this situation.

**B.      Summary Judgment Motions**[4]

**1.      Count I:  Breach of Contract**

Kadiyala claims BofA breached its online banking agreement by refusing to honor his transfers from Account 3998 to Account 9378.  "Under Illinois law, a plaintiff asserting a breach of contract claim 'must plead and prove: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach.'"  *DeliverMed Holdings, LLC* v. *Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (quoting *Law Offices of Colleen M. McLaughlin* v. *First Star Fin. Corp.*, 963 N.E.2d 968, 981, 2011 IL App (1st) 101849, 357 Ill. Dec. 570 (2011)).

Kadiyala argues that BofA breached the following provision of the online banking agreement:  "When you give someone your Online Banking ID and passcode, you are authorizing that person to use your service, and you are responsible for all transactions that person performs while using your service."[5]  (*See* dkt. 19, ex. R at 23.)  Although this provision clarifies who bears the risk in the event of unauthorized online transactions, it does not impose an affirmative obligation on BofA to honor such transactions.[6]  Because Kadiyala does not point to a provision of the online banking agreement that imposes such an affirmative obligation on BofA, his claim for breach of contract fails.  *See RWJ Mgmt. Co.* v. *BP Prods. N. Am., Inc.*, No. 09 C 6141, 2011 WL 101727, at *6 (N.D. Ill. Jan. 12, 2011) (citing *Hall-Moten* v. *Smith*, No. 05 C 5510, 2009 WL 1033361, at *8 (N.D. Ill. Apr. 17, 2009)) (granting summary judgment for defendant on breach of contract claim where plaintiff failed to identify specific provisions defendant breached).  Summary judgment is granted in favor of BofA on Count I.

**B.      Count II:  Refusal to Honor Cashier's Checks in Violation of the UCC**

Under Illinois law, a cashier's check is a negotiable instrument.  810 Ill. Comp. Stat. 5/3-104.  Negotiable instruments can be enforced by "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in

---

[4] Because the parties do not dispute choice of law, the court applies Illinois substantive law.  *See TKK USA* v. *Safety Nat'l Cas. Corp.*, 727 F.3d 782, 786 (7th Cir. 2013) (citing *Santa's Best Craft, LLC* v. *St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345-46 (7th Cir. 2010)).

[5] This provision does not appear to apply to the EIM accounts because it is contained within a section of the online banking agreement that applies only to consumer and sole proprietor accounts.  (*See* dkt. 19, ex. R at 21.)  EIM's accounts were small business accounts.  (*See* dkt. 19, ex. at 2 (identifying EIM as a "small business" banking client)).  Because BofA failed to raise this issue in its brief, the court will address the merits of Kadiyala's argument as if the provision did apply to the EIM accounts.

[6] Kadiyala also fails to allege that he is a third-party beneficiary of the contract between Pupke and BofA, which is necessary for him to assert a breach of contract claim.  *See, e.g., Roche* v. *Travelers Prop. Cas. Ins. Co.*, No. 07-CV-302, 2008 WL 2875250, at *5 (S.D. Ill. July 24, 2008) ("In Illinois, one who is not a party to the contract she seeks to enforce must sue under a third-party beneficiary theory.") (citing *Jones* v. *Chicago HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1135, 191 Ill. 2d 278, 246 Ill. Dec. 654 (2000)).

possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d)."[7]  *Id.* § 3-301.  A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  *Id.* § 1-201(b)(21)(A).  Generally, a purchaser or remitter of a cashier's check who is not a holder or payee has no standing to enforce it.  *See, e.g., Munson* v. *Am. Nat'l Bank & Trust Co. of Chi.*, 484 F.2d 620, 622 n.2 (7th Cir. 1973); *JTM, Inc.* v. *Totalbank*, 795 So. 2d 161, 162-63 (Fla. Dist. Ct. App. 2001); *but see In re Aztec Supply Corp.*, 399 B.R. 480, 496 (Bankr. N.D. Ill. 2009) (allowing purchaser to whom cashier's check was assigned to assert bank improperly dishonored check); *Apex, Inc.* v. *E&M Custom Homes, LLC*, 53 Conn. L. Rptr. 108, at *7 n.12 (Conn. Super. Ct. 2012) (discussing limited circumstances in which purchaser may enforce cashier's check and holding purchaser had interest in certified check after payee disclaimed right to check).

Kadiyala was not a holder of the cashier's checks and he has not asserted any facts that would warrant his standing to enforce the checks.  The checks clearly name Himont Law as the payee and EIM as the remitter.  (Dkt. 19, ex. M.)  In purchasing the checks, Kadiyala acted as an authorized signatory or agent for EIM.  Kadiyala contends that he is a holder in due course through "attribution" because the payee, Himont Law, was his legal counsel at the time the checks were drawn.  "Attribution" is a term of art used in certain legal fields.  *See, e.g.,* 26 U.S.C. § 318 (determining ownership of stock for tax purposes); 17 U.S.C. § 106A (authorship under copyright law).  The court has not been able to find any special theory of attribution that would aid Kadiyala in his claim and Kadiyala provides no support for his argument.[8]  Because Kadiyala lacks standing to enforce the cashier's checks, summary judgment is granted in favor of BofA on Count II.

## III.  Count III:  Breach of Fiduciary Duty

Finally, Kadiyala claims that BofA owed him a fiduciary duty which it breached by refusing to honor the cashier's checks.  To succeed on a breach of fiduciary duty claim, a plaintiff must show (i) the existence of a fiduciary duty, (ii) a breach of the duty, and (iii) that the breach proximately caused the plaintiff's injury.  *See Neade* v. *Porter*, 739 N.E.2d 496, 502, 193 Ill. 2d 433, 250 Ill. Dec. 733 (2000).

Kadiyala has cited no legal theory or facts showing BofA owed him a fiduciary duty as an authorized signatory on Account 9378.  He was not the account holder, and even if he were, under Illinois law, "a bank generally owes no fiduciary duty to its depositors."  *Miller* v. *Am. Nat'l Bank & Trust Co. of Chicago*, 4 F.3d 518, 520 (7th Cir. 1993) (citing *Mijatovich* v. *Columbia Savs.& Loan Ass'n*, 522 N.E.2d 728, 731, 168 Ill. App. 3d 313, 119 Ill. Dec. 66 (1988)); *see also Thomas* v. *UBS AG*, 706 F.3d 846, 853 (7th Cir. 2013) ("[A] bank is not a fiduciary of its depositors."); *but see Paloian* v. *F.D.I.C.*, No. 11 C 50017, 2011 WL 5325562, at *4 (N.D. Ill. Nov. 2, 2011) (*de facto* fiduciary relationship may arise where the bank dominates

---

[7] Neither § 3-309 (Enforcement of lost, destroyed, or stolen instrument) or § 3-418 (Payment or acceptance by mistake) is applicable to the instant case.

[8] Kadiyala also claims that he has an interest in the cashier's check because he "entered into a contract [with BofA] on January 6, 2013."  (Dkt. 39, ¶ 8.)  This contract, however, is irrelevant to the issue of standing with regard to Count II.

and influences depositor).  Accordingly, Kadiyala's claim for breach of fiduciary duty fails as a matter of law.  *See Obras Civiles, S.A.* v. *ADM Secs.*, *Inc.*, 32 F. Supp. 2d 1018, 1024 (N.D. Ill. 1999) (granting summary judgment for defendant on breach of fiduciary duty claim where plaintiff presented no facts to suggest any special circumstances to establish fiduciary relationship); *see also Paloian*, 2011 WL 5325562, at *4 (breach of fiduciary duty claim dismissed because plaintiff failed to show particular circumstances creating fiduciary relationship).  Summary judgment in favor of BofA is granted on Count III.


Date:  July 30, 2014